JUSTICE WEBER
delivered the Opinion of the Court.
This is an appeal from a decision of the Eighth Judicial District Court, Cascade Comity, granting Kathy Darlene Blair’s motion requesting she be awarded her percentage interest in Stephen J. Blair’s military Special Separation Benefits. We affirm.
We restate the issues on appeal:
I. Did the District Court err when it found payments received by a member of the military under the Special Separation Benefits program an item of marital property or retirement benefits subject to division by the dissolution court?
II. Did the District Court lose jurisdiction to change the property settlement provisions of the Decree when it failed to rule on the motion within forty-five days from the time it was filed?
III. Was the District Court’s decision barred by res judicata?
*198 IV. Did the District Court err when it did not order Stephen Blair to reimburse Kathy Blair for attorney fees?
The parties were married in 1980, and their marriage was dissolved by the District Court in 1993. The parties agreed to and signed a marital property settlement which the court found not unconscionable. The court divided the marital estate as the parties suggested. Part of the division was that Kathy Blair (Kathy) would receive a share of Stephen Blair’s (Stephen) future net disposable military retirement pay. Her share would be based on a percentage using the number of years they were married (twelve) and the actual number of years Stephen served on active duty. At that time, it was assumed Stephen would retire from the military after twenty years of active duty.
In 1994, Stephen was accepted into the Special Separation Benefits program (SSB) pursuant to 10 U.S.C. § 1174a. He voluntarily separated from his military service on October 1,1994, and agreed to serve in the Ready Reserve for a minimum of three years. He received separation pay based on years of service and current base pay. Stephen completed fifteen years of active service.
On March 24, 1994, Kathy filed a motion entitled Motion for an Order Modifying Decree as to Retirement Benefits. On May 6, 1994, she filed a motion to divide the retirement benefits Stephen received from the SSB program. The District Court held a hearing on the motions on May 6,1994, and awarded Kathy a percentage interest of Stephen’s separation pay.
Stephen appeals from the District Court’s September 21, 1994 decision.
I.
Did the District Court err when it found payments received by a member of the military under the Special Separation Benefits program an item of marital property or retirement benefits subject to division by the dissolution court?
Stephen argues that military retirement and SSB are defined by two different statutes and are two distinct groups of military entitlement. He then argues that 10 U.S.C. § 1408 specifically authorizes the division of military retirement pay as a marital asset in a proceeding for dissolution, but 10 U.S.C. § 1174a does not contain any language authorizing the division of SSB pay in a dissolution proceeding.
*199 Stephen refers to McCarty v. McCarty (1981), 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589, in which the U.S. Supreme Court emphasized that the decision as to the availability of retirement pay to a spouse is left to Congress alone. After the McCarty ruling, Congress enacted the Uniformed Services Former Spouses’ Protection Act (Spouses’ Protection Act), 10 U.S.C. § 1408. This act authorizes a dissolution court’s division of “disposable retired or retainer pay.”
Stephen argues that his separation pay is not an early retirement benefit. He states that he is no longer eligible for military retirement because he terminated his active duty status prior to the number of years of service required for retirement, and that he received special separation pay in return for serving in the military’s Ready Reserve for at least three years following his separation from active duty.
Stephen also refers to Mansell v. Mansell (1989), 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675, in which the U.S. Supreme Court ruled that state courts could not treat the portion of military retirement waived in order to receive Veteran’s Administrate on disability benefits as marital property divisible under the Spouses’ Protection Act. Stephen concludes, under McCarty and Mansell, state courts do not have authority to divide SSB pay as a marital asset unless Congress specifically authorizes such a division.
Kathy argues that the benefits provided under 10 U.S.C. § 1174a are clearly for purposes of retirement. She states that the SSB program is known as the “Early Out Program.” She points out that SSB benefits are awarded based on years served of active duty the same as other retirement benefits.
Kathy refers to Elzie v. Aspen (D.D.C.1993), 841 F.Supp. 439, 440, which found that SSB benefits provide incentive payments as inducements “to elect early retirement.” In addition, Kathy includes a copy of a brochure disseminated by the Department of Defense describing the voluntary separation incentives and what they mean to eligible military members. On page six of the brochure, in a question/answer format, it states:
What happens to VSI or SSB if I become retirement eligible?
Essentially, you pay it back from your retirement pay.
Kathy stresses the point that if a member voluntarily separates from active duty and then re-enlists, his or her retirement pay, not the current wages, would be tapped for reimbursement. Kathy then refers to the District Court in Cascade County which has twice ruled that SSB benefits are marital property and subject to division upon *200 receipt. In re the Marriage of Daws, BDR 91-626, decided on July 1, 1992; and, In re the Marriage of Plunkett, BDR 90-520, decided on September 8, 1992.
The District Court found that Stephen and Kathy, prior to dissolution, negotiated the terms and freely entered into a Property Settlement Agreement stating “[Kathy] was awarded a share of [Stephen’s] future net disposable military retirement pay, to be calculated based upon [Stephen’s] actual number of years of service at the time of retirement.”
The District Court then likened SSB payments to military pensions because they are both based on longevity of service. The court stated that military pensions have long been declared in Montana to be a marital asset divisible upon dissolution; therefore, SSB payments are also divisible. Stephen and Kathy were married twelve of the fifteen years of his active service. Since a portion of Stephen’s separation benefits accrued during his marriage to Kathy, the court concluded that portion is divisible by the court upon dissolution.
Our standard of review of the District Court’s conclusions of law is to determine if the District Court’s interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-475, 803 P.2d 601, 603-604.
Stephen relies on McCarty and Mansell for the principle that federal law preempts state law in the treatment of military retirement. In McCarty, the U.S. Supreme Court held that the husband’s military retirement pay was not subject to California’s community property laws; and, therefore, could not be attached to satisfy a property settlement incident to the dissolution of marriage absent congressional authority to do so. McCarty, 453 U.S. at 228-232, 101 S.Ct. at 2739-2741, 69 L.Ed.2d at 603-605. However, in response to McCarty, Congress enacted Title 10 U.S.C. § 1408, known as the Former Spouses’ Protection Act. This act provided the congressional authority the Supreme Court found absent.
Further, the Court’s reasoning, in Mansell, is contrary to Stephen’s analysis. There, the Court reiterated its prior holding that state law preempts federal law in all domestic relations unless Congress positively enacts it. Mansell, 490 U.S. at 587, 109 S.Ct. at 2028, 104 L.Ed.2d at 684. Congress expressly excluded VA disability benefits received in lieu of military retirement from division by the state dissolution court. 10 U.S.C. § 1048(a)(4)(B). No such expression was enacted for military retirement waived to receive special separation benefits under 10 U.S.C. § 1174(a). The holding in Mansell clearly *201 sets forth limitations on the holding in McCarty as applied to this case.
Further, we note the Department of Defense’s statement concerning a dissolution court’s ability to divide SSB payments. Page six of the Department’s brochure states:
How will state courts treat VSI/SSB in a divorce settlement?
The treatment of VSI or SSB is not dictated by Federal law. It will be up to the state courts to rule on the divisibility of these incentives.
We also note that a federal district court has stated:
The VSI/SSB program provides, to those members who qualify, incentive payments and medical and veterans benefits as inducements to elect early retirement.
Elzie, 841 F.Supp. at 440.
Like retirement, Stephen’s eligibility for the SSB program was based on the number of years he served in active duty. 10 U.S.C. § 1174a(c). As with retirement pay, Stephen’s separation pay was calculated according to the number of years he was in active service. 10 U.S.C § 1174a(b)(2)(A). Stephen could have remained on active duty for five more years and received retirement pay. Instead, he chose voluntary separation from the military and received his compensation at an earlier date. For the reasons we have stated, we characterize separation pay received under the Special Separation Benefits program (10 U.S.C. § 1174a) as an election for early retirement.
We hold that payments received by a member of the military under the Special Separation Benefits program are an item of marital property subject to division by the dissolution court.
II.
Did the District Court lose jurisdiction to change the property settlement provisions of the Decree when it failed to rule on the motion within forty-five days from the time it was filed?
Stephen states that under Rule 60(c), M.R.Civ.P., a motion for relief must be determined within the forty-five day period set out in Rule 59(d), M.R.Civ.P.; and that if the court fails to rule, the motion shall be deemed denied. He points out that the District Court did not rule upon Kathy’s motion to modify the Decree within the 45 day period and was, therefore, beyond its jurisdiction.
Kathy emphasizes that her intention was not to modify the Decree as was stated in the title of the original petition but rather to enforce the same. Kathy cites § 1-3-219, MCA: “The law respects form less than substance.” She argues that the substance of her motion clearly *202 was for the District Court to force Stephen to pay to Kathy her share of his retirement benefits, albeit early, as their original agreement stated. She argues, further, that the property settlement agreement provided for enforcement remedies; therefore, the District Court’s jurisdiction continued in order to enforce the Decree.
The District Court found Stephen’s actions in denying Kathy part of his separation pay to be unconscionable. Based on that unconscionability, the court reopened the Decree and ordered that Stephen pay to Kathy her percentage interest in his SSB pay.
Although we agree with the result of the District Court’s conclusion, we note that the court mischaracterized the motion it had before it when it “reopened the Decree based on unconscionability.” The motion was, in substance, a motion to clarify the terms of the agreement and to subsequently enforce them. We have held that the power inherent in every court to enforce its judgments and decrees “is not to be limited by the time limits in Rules 59 and 60, M.R.Civ.P.” Smith v. Foss (1978), 177 Mont. 443, 447, 582 P.2d 329, 331. We conclude that the District Court was correct in treating the SSB program as early retirement divisible under its original Decree. We hold that the District Court did not lose its jurisdiction because it failed to rule on Kathy’s motion in excess of forty-five days.
III.
Was the District Court’s decision barred by res judicata?
On April 28, 1993, the District Court found that the “MARITAL SETTLEMENT AGREEMENT signed by the parties is equitable and not unconscionable, and should be incorporated into the decree of dissolution of marriage.” Here, the District Court concluded “[Stephen] has voluntarily and unilaterally upset that division, which has resulted in a substantial detriment to the reasonable future expectations of [Kathy] and which will give [Stephen] an immediate and substantial windfall.” (Emphasis added.) The court then found the result of Stephen’s actions to be unconscionable.
Stephen points to the Commissioner’s Notes to § 40-4-201, MCA, (Separation agreements) which says, “The court’s determination, in the decree, that the terms are not unconscionable, under the ordinary rules of res judicata, will prevent a later successful claim of unconscionability.” Stephen states further that case law clearly supports the application of the doctrine of res judicata to bar the reopening of a judgment on the grounds of unconscionability after a previous finding of a lack of unconscionability is made, and the agreement *203 merged in the Decree. See Hopper v. Hopper (1979), 183 Mont. 543, 601 P.2d 29.
Stephen then lists the four criteria necessary to establish res judicata as set forth in Hopper.
(1) The parties or their privies must be the same;
(2) The subject matter of the action must be the same;
(3) The issues must be the same, and must relate to the same subject matter; and
(4) The capacities of the persons must be the same in reference to the subject-matter and to the issues before them.
Stephen argues that the four criteria are met, so the doctrine of res judicata barred a finding of unconscionability.
Kathy argues again that the District Court did not modify the Decree and did not reverse any findings. It enforced the division of Stephen’s “net disposable military retirement pay.” She contends that it was Stephen, through his announcement that he intended to retire early and deprive Kathy of her vested expectation interest in the future marital property, who attempted to modify the Decree/Property Settlement Agreement; thus, all the law cited by Stephen pertaining to the applicability of the doctrine of res judicata applies equally to him.
We state again that the motion was, in substance, a motion to enforce the Decree, not to modify the same. The District Court looked to unconscionability in order to reopen and then to modify the Decree under Marriage of Laskey (1992), 252 Mont. 369, 829 P.2d 935. In its conclusion, the District Court did not reverse its original finding of the settlement agreement as to unconscionability, but found Stephen’s attempt to “voluntarily and unilaterally upset” that agreement was unconscionable.
Stephen is correct in that the parties, the subject matter, and the capacities of the parties are the same as those under the original Decree. However, the most important of the four criteria for res judicata is the identity of issues which is not present here. In re the Marriage of Harris (1980), 189 Mont. 509, 513, 616 P.2d 1099, 1101.
In the first case, the issue was how to divide the marital assets. The District Court incorporated Stephen’s and Kathy’s Property Settlement Agreement into its order dividing the marital property as they suggested. Here, the issue differs in that the court was asked to determine whether or not payments Stephen received upon voluntarily separating from the military were the equivalent of “net *204 disposable military retirement pay” under the Property Settlement Agreement per its original terms. This issue was not addressed in the Property Settlement Agreement nor in the Decree. On its face, the Decree did not identify whether or not voluntary separation pay was a form of net disposable military retirement pay. We conclude that the doctrine of res judicata does not apply where the issues were not previously addressed.
We hold that the District Court’s decision was not barred by res judicata.
IV.
Did the District Court err when it did not order Stephen Blair to reimburse Kathy Blair for attorney fees?
Kathy did not address this issue in her motions nor at the hearing. We will not address issues raised for the first time on appeal. Hislop v. Cady (1993), 261 Mont. 243, 250, 862 P.2d 388, 392. The issue of attorney fees was not raised at the District Court level and, therefore, can not be raised here.
Affirmed.
CHIEF JUSTICE TURNAGE and JUSTICE HUNT concur.