OPINION
{¶ 1} Defendant-appellant, Ron R. Scott, a pro se litigant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that amended a prior divorce decree and modified an award of disposable military retired pay to plaintiff-appellee, Tamara A. Scott. Because the trial court abused its discretion, we reverse the trial court's judgment and remand the cause.
 {¶ 2} After the Franklin County Court of Common Pleas, Division of Domestic Relations, considered the matter on an uncontested basis, Ron R. Scott and Tamara A. Scott were divorced pursuant to a decree of divorce filed May 16, 1994. In its judgment of May 16, 1994, the trial court ordered, among other things, that "[p]laintiff shall receive 50% of defendant's disposable military retirement pay based on defendant's base pay rate on December 6, 1993." (Divorce Decree filed May 16, 1994, at 8.)
 {¶ 3} According to plaintiff, because language in the divorce decree of May 16, 1994, was unclear, the Defense Finance and Accounting Service ("DFAS") rejected plaintiff's application for payment of plaintiff's portion of defendant's disposable military retired pay. Therefore, on November 14, 2002, pursuant to Civ.R. 60(B), plaintiff moved the trial court to set aside the divorce decree of May 16, 1994, as it pertained to plaintiff's award of defendant's disposable military retirement pay.
 {¶ 4} On January 30, 2003, the trial court ordered an evidentiary hearing to consider plaintiff's Civ.R. 60(B) motion. A hearing was scheduled for February 25, 2003.
 {¶ 5} On March 26, 2003, the trial court ordered the following modification:
11. Pensions — Plaintiff is awarded a percentage of the Defendant's disposable military retired pay, to be computed by multiplying 50% by a fraction, the numerator of which is 196 months of marriage during the Defendant's creditable military service, divided by the Defendant's total number of months of creditable military service.
IT IS FURTHER ORDERED that the defendant shall reimburse to Plaintiff an amount equal to the monthly retirement award as determined by the aforementioned formula commencing the date of retirement through March 2003.
(Judgment Entry filed March 26, 2003.)
 {¶ 6} On April 25, 2003, defendant appealed from the trial court's judgment of March 26, 2003. With this appeal, defendant did not file a transcript of the evidentiary hearing that was scheduled for February 25, 2003.
 {¶ 7} In this appeal, defendant assigns six errors:
Assignment of Error No. 1
The Lower Court erred when it said, "the appellant has been a bona fide resident of Franklin County and of the State of Ohio for at least six months immediately preceding the filing of the complaint."
Assignment of Error No. 2
The Lower Court erred when it set aside the language in original decree of divorce without finding of fact relative to the dollar amount calculable in the original decree of divorce.
Assignment of Error No. 3
The Lower Court erred when it did not address appellant's motion in response [to] appellee's motion to set aside thus denying him justice before the court.
Assignment of Error No. 4
The Lower Court erred when it failed to consider the appellant's residence was jacksonville, florida and that he cound not afford to hire an attorney to represent him.
Assignment of Error No. 5
The Lower Court erred when it failed to consider the apellant's faxed request for a pass date which would have been granted if appellant had an attorney before the court making the request on his behalf.
Assignment of Error No. 6
The Lower Court erred when it ordered appellant to reimburse appellee because the usfspa does not provide for the collection of arrearages of retired pay as property or alimony.
 {¶ 8} On appeal of a Civ.R. 60(B) determination, a reviewing court must determine whether a trial court abused its discretion.State ex rel. Richard v. Seidner (1996), 76 Ohio St.3d 149,151, citing Rose Chevrolet, Inc. v. Adams (1988),36 Ohio St.3d 17, 20. "An abuse of discretion connotes conduct which is unreasonable, arbitrary, or unconscionable." Seidner, at 151, citing State ex rel. Edwards v. Toledo City School Dist. Bd. ofEdn. (1995), 72 Ohio St.3d 106, 107.
 {¶ 9} Defendant's first assignment of error challenges the trial court's personal jurisdiction of defendant when it rendered a divorce decree in May 1994. See Decree of Divorce filed May 16, 1994, at 1-2 ("[t]he Court FINDS that the defendant has been a bona fide resident of Franklin County and of the State of Ohio for at least six months immediately preceding the date of the filing of the Complaint").
 {¶ 10} However, in this appeal, defendant does not appeal from the trial court's judgment of May 16, 1994. Rather, defendant appeals from the trial court's judgment of March 26, 2003.
 {¶ 11} Because the trial court's divorce decree of May 16, 1994, is not properly before this court, we do not consider defendant's contention that the trial court lacked personal jurisdiction when it rendered judgment in May 1994.
 {¶ 12} Moreover, to the extent defendant challenges the trial court's exercise of personal jurisdiction when it rendered its judgment of March 26, 2003, defendant's contention is not well-taken.
 {¶ 13} "A party who voluntarily appears in an action, and fails at his first opportunity to challenge the court's exercise of jurisdiction, will not later be heard to complain that the court lacked such jurisdiction. By appearance for any other purpose than to object to jurisdiction, a defendant enters his general appearance to the action and voluntarily submits himself to the jurisdiction of the court, and cannot afterwards claim that the court's jurisdiction of his person has not been properly obtained." Michigan Millers Mut. Ins. Co. v. Christian,153 Ohio App.3d 299, 2003-Ohio-2455, at ¶ 10. (Footnotes omitted.)
 {¶ 14} Here, the record is devoid of any motions by defendant that challenged the trial court's exercise of personal jurisdiction. See Gangale v. State Bur. of Motor Vehicles, Franklin App. No. 01AP-1406, 2002-Ohio-2936, at ¶ 58, citingState v. Williams (1977), 51 Ohio St.2d 112, modified on other grounds, State v. Gillard (1988), 40 Ohio St.3d 226, paragraph two of the syllabus; State v. Comen (1990), 50 Ohio St.3d 206,211 ("[t]he failure to raise an issue at the trial level waives it on appeal"). Moreover, because defendant did not file a transcript of the hearing that was scheduled for February 25, 2003, we cannot determine whether the trial court's exercise of personal jurisdiction was challenged at the evidentiary hearing.
 {¶ 15} "`[W]here a transcript of any proceeding is necessary for disposition of any question on appeal, the appellant bears the burden of taking steps required to have the transcript prepared for inclusion in the record. * * * Any lack of diligence on the part of an appellant to secure a portion of the record necessary to his appeal should inure to appellant's disadvantage rather than to the disadvantage of appellee.'" State ex rel.Montgomery v. R D Chemical Co. (1995), 72 Ohio St.3d 202, 204. (Citations omitted.)
 {¶ 16} Furthermore, "`[w]hen portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.'"Smith v. Ohio Dept. of Rehab. Corr. (1995),104 Ohio App.3d 210, 213, quoting Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199.
 {¶ 17} Accordingly, defendant's first assignment of error is overruled.
 {¶ 18} Defendant's second assignment of error asserts the trial court erred when it modified an earlier award of defendant's disposable military retirement pay to his former spouse.
 {¶ 19} The Uniformed Services Former Spouses' Protection Act ("USFSPA"), P.L. 97-252, 96 Stat. 730, was enacted in direct response to McCarty v. McCarty (1981), 453 U.S. 210,101 S.Ct. 2728. Mansell v. Mansell (1989), 490 U.S. 581, 584,109 S.Ct. 2023. In McCarty, the United States Supreme Court "held that the federal statutes then governing military retirement pay prevented state courts from treating military pay as community property." Mansell, at 584, construing McCarty, supra.
 {¶ 20} Prior to the USFSPA, "state courts were precluded by federal pre-emption from awarding spouses in divorce cases any portion of the non disability military retirement pay received by, [as in this case], their ex-husbands." Fern v.United States (U.S.Ct.Cl. 1988), 15 Cl.Ct. 580, 581, citing McCarty, supra. The USFSPA, "in effect, overruled the McCarty holding by removing federal pre-emption and placing state divorce courts in the same position they were in on June 25, 1981, the day before the McCarty decision, relative to the treatment of military retired pay." Fern, at 581. But, see, Mansell, supra, at 594 (observing that "the legislative history [of the USFSPA], which read as a whole, indicates that Congress intended both to create new benefits for former spouses and to place on state courts limits designed to protect military retirees").
 {¶ 21} According to the divorce decree of May 16, 1994, the trial court awarded to plaintiff 50 percent of defendant's disposable military retirement pay based upon defendant's base pay rate on December 6, 1993. Defendant asserts that at that time he had been on active duty in the United States Navy for 16 years and 3 months.
 {¶ 22} Following the divorce, defendant contends he remained in military service for an additional eight years and three months. According to defendant, in March 2003 when the trial court modified the divorce decree of May 16, 1994, the trial court based its order upon defendant's total creditable service, which included the additional eight years and three months of military service that defendant allegedly served following the divorce. Therefore, defendant argues the trial court through its judgment of March 26, 2003, in effect erroneously awarded $604.67 per month to plaintiff, rather than $505.72 per month under the divorce decree of May 16, 1994.
 {¶ 23} To be in accord with its judgment of May 16, 1994, rather than base plaintiff's award of defendant's disposable military retirement pay upon all of defendant's creditable service, the trial court in its order of March 26, 2003, should have based plaintiff's award only upon a portion of defendant's creditable military retired service, that is, the number of months of creditable service that would have applied had defendant retired on December 6, 1993. See 60 F.R. 17507
(hypothetical award based upon a retirement pay amount different from a service member's actual retirement pay).
 {¶ 24} Accordingly, defendant's second assignment of error is sustained.
 {¶ 25} Defendant's third assignment of error asserts the trial court erred because it failed to respond to defendant's motion.
 {¶ 26} On February 12, 2003, defendant filed a response to plaintiff's Civ.R. 60(B) motion. In this filing, defendant also petitioned the trial court to set aside the divorce decree of May 16, 1994, as it related to an award of defendant's disposable military retired pay.
 {¶ 27} Notwithstanding defendant's contention, we do not find any evidence to support defendant's claim that the trial court did not consider defendant's filing. Moreover, to the extent the trial court failed to expressly rule upon defendant's petition to set aside the divorce decree of May 16, 1994, we find the trial court impliedly overruled defendant's petition. See Portofe v.Portofe, 153 Ohio App.3d 207, 2003-Ohio-3469, at ¶ 16 ("Ohio law is well established that where the court fails to rule on an objection or motion, it will be presumed that the court overruled the objection or motion. Generally, when the trial court enters judgment without expressly determining a pending motion, the motion is also considered impliedly overruled").
 {¶ 28} Accordingly, defendant's third assignment of error is overruled.
 {¶ 29} Defendant's fourth assignment of error asserts the trial court erred when it failed to consider that defendant was an out-of-state resident and that defendant could not afford an attorney to represent him.
 {¶ 30} Notwithstanding defendant's contention, we find no evidence to support defendant's claim the trial court failed to consider that defendant was an out-of-state resident. Nor is there any documentary evidence supporting defendant's claim that he was unable to afford counsel.
 {¶ 31} Furthermore, as a matter of law, we find defendant was not entitled to have counsel appointed for him. As stated inRoth v. Roth (1989), 65 Ohio App.3d 768, 776:
The Sixth Amendment to the United States Constitution provides a right to effective assistance of counsel in a criminal proceeding. Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692. The right to be represented by counsel in a civil proceeding where the state seeks to take the defendant's life, liberty, or property is guaranteed by the Fifth Amendment to the United States Constitution as applied to the states by theFourteenth Amendment. However, in a civil case between individual litigants, there is no constitutional right to representation. The state does provide a forum, via the judicial system, in which litigants can rsolve disputes. * * *
 {¶ 32} Accordingly, defendant's fourth assignment of error is overruled.
 {¶ 33} Defendant's fifth assignment of error asserts the trial court erred when it failed to consider defendant's motion for a continuance.
 {¶ 34} Whether to grant a continuance is entrusted to the broad, sound discretion of the trial court. State v. Unger
(1981), 67 Ohio St.2d 65, paragraph one of the syllabus. Absent an abuse of discretion, an appellate court must not reverse a denial of a continuance. Id. at 67. An abuse of discretion "`connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 35} "`There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" Unger, at 67, quoting Ungar v. Sarafite (1964), 376 U.S. 575, 589,84 S.Ct. 841.
 {¶ 36} When evaluating a motion for a continuance, a trial court should note, among other things:
[T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
Unger, at 67-68.
 {¶ 37} Here, in a letter sent via facsimile on February 25, 2003, defendant requested a continuance of the proceedings that were scheduled for the same day. In this letter, defendant admitted that he was "somewhat overwhelmed in this process * * *." Defendant further stated that "[u]nfortunately as well, I am not able to be in Columbus today in order to articulate my argument before Your Honor as would be most desired." (Letter to Honorable Carol Squire from Ron R. Scott dated February 25, 2003.)
 {¶ 38} Except for an oblique reference to being "overwhelmed," defendant failed to provide the trial court with a reasonable explanation for his inability to be present at the court proceedings that were scheduled for the same day. Under these circumstances, we do not find the trial court acted unreasonably, arbitrarily, or unconscionably in denying defendant's motion for a continuance.
 {¶ 39} Accordingly, defendant's fifth assignment of error is overruled.
 {¶ 40} Defendant's sixth assignment of error asserts the trial court erred when it ordered defendant to reimburse plaintiff. Defendant further contends the USFSPA does not provide for the collection of arrearages of retired pay as property. Plaintiff agrees the trial court does not have the ability to order the military to pay arrearages; however, plaintiff contends the issue is moot because the trial court's judgment was proper. (Appellee's brief at 8.) Neither party cites to any authority to support the contention that the USFSPA does not provide for the collection of arrearages of retired pay as property.
 {¶ 41} In its judgment of March 26, 2003, the trial court ordered that "defendant shall reimburse to Plaintiff an amount equal to the monthly retirement award as determined by the aforementioned formula commencing the date of retirement through March 2003." (Judgment Entry filed March 26, 2003.) We have already determined the trial court erred in its formulation of March 26, 2003, pertaining to plaintiff's portion of defendant's military retired pay. Therefore, to the extent the trial court ordered application of this erroneous formulation in its judgment of March 26, 2003, defendant's sixth assignment of error is well taken.
 {¶ 42} In Baker v. Baker (Jan. 19, 1996), Seneca App. No. 13-95-36, the court observed the following:
In 1983, Congress enacted the Uniformed Services Fomer Spouses' Protection Act ("USFSPA"), which provides that a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.10 U.S.C.S. § 1408(c)(1) (Supp. 1993). Thus, although the federal statuteauthorizes the division of a military pension as maritalproperty, state law controls whether the pension is maritalproperty, and, if so, how it should be divided.
(Emphasis added.) See, also, Mackey v. Mackey,95 Ohio St.3d 396, 2002-Ohio-2429, at ¶ 9 (concluding "the USFSPA gives state courts the authority to equitably divide disposable retirement pay consistent with the laws of a particular jurisdiction").
 {¶ 43} Thus, if state law controls whether disposable military retired pay is marital property, and if so, how such disposable military retired pay should be divided, Baker andMackey, supra, it logically follows that a state court when considering a Civ.R. 60(B) motion to modify an award of marital property, such as disposable military retired pay, has authority to order arrearages from disposable military retired pay if such an order is consistent with the laws of a particular jurisdiction. See, e.g., Hodgson v. Hodgson (Oct. 8, 1999), Greene App. No. 99 CA 41 (affirming trial court's modification of portion of divorce decree related to military retirement benefits pursuant to plaintiff-appellee's Civ.R. 60[B] motion).
 {¶ 44} DoD Financial Management Regulation 291111, Volume 7B, Chapter 29 (Sept. 1999) provides that "[p]ayments to the former spouse are prospective in terms of the amount stated in the court order and arrearages will not be considered in determining the amount payable from retired pay." See former Section 63.6(h)(10), Title 32, C.F.R. (2001) ("[p]ayments made shall be prospective in terms of the amount stated in the court order. Arrearages will not be considered in determining the amount payable from retired pay"). See, also, Gilbert, A Family Law Practitioner's Road Map to the Uniformed Services Former Spouses Protection Act (1992), 32 Santa Clara L.Rev. 61, 70, fn. 50 ("[a]rrearages of military retired pay based upon a division of property, as opposed to spousal or child support, cannot be obtained through direct payment by the military service"); Joan M. Burda Michael B. Majeski (2000) 17 No. 5 GPSolo 35 ("[t]he USFSPA provides for direct payment of current child support, child support arrearages, and current spousal support. The USFSPA does not permit the payment of either spousal support arrearages or past due property division payments").
 {¶ 45} Therefore, even though a state court may order payment of an arrearage pertaining to a division of marital property, pursuant to DoD Financial Management Regulation 291111 (1999), DFAS would not consider the arrearage in determining the amount payable from military retirement pay when making a direct payment. Presumably then the party in arrears would be required to directly pay any arrearage himself or herself pursuant to the court order.
 {¶ 46} Thus, defendant's contention that the USFSPA does not provide for the collection of arrearages of retired pay as property is well-taken.
 {¶ 47} However, in its judgment of March 26, 2003, the trial court did not order DFAS to include arrearages when making a direct payment from defendant's disposable military retired pay.
 {¶ 48} Rather, in its judgment, the trial court ordered "that the defendant shall reimburse to Plaintiff an amount equal to the monthly retirement award as determined by the aforementioned formula commencing the date of retirement through March 2003." (Judgment Entry filed March 26, 2003; emphasis added.) Thus, by ordering defendant to directly pay arrearages, rather than DFAS, the trial court did not violate the USFSPA.
 {¶ 49} Therefore, defendant's sixth assignment of error is sustained but only to the extent that the trial court erred in its formulation pertaining to plaintiff's portion of defendant's disposable military pay.
 {¶ 50} Accordingly, having sustained defendant's second and sixth assignments of error and having overruled defendant's first, third, fourth, and fifth assignments of error, we therefore affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas of March 26, 2003. Furthermore, we remand the cause to the trial court with instructions to recalculate plaintiff's portion of defendant's disposable military pay in a manner consistent with this opinion and in accordance with law.
Judgment affirmed in part, reversed in part and cause remanded with instructions.
Bowman and Watson, JJ., concur.